**[Cite as *State v. Ward*, 2021-Ohio-616.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| State of Ohio | Court of Appeals No. L-19-1242 |
| Appellee | Trial Court No. CR0201802818 |
| v. | |
| James Ward | **DECISION AND JUDGMENT** |
| Appellant | Decided: March 5, 2021 |

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Maggie E. Koch, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, James Ward, appeals the judgment of the Lucas County Court of

Common Pleas convicting him, following a jury trial, of two counts of retaliation in

violation of R.C. 2921.05(A) and (C). For the reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} This case began on October 3, 2018, when the Lucas County Grand Jury indicted appellant on five counts of retaliation in violation of R.C. 2921.05(A) and (C), felonies of the third degree. The matter proceeded to a two-day jury trial.

{¶ 3} At the beginning of the trial, the state dismissed three of the counts of retaliation. The following evidence was presented as to the remaining two counts.

{¶ 4} Stephen Pronai testified that he has been the elected prosecutor for Madison County, Ohio, since 1996. Pronai stated that in 2006, his office prosecuted appellant for a weapons under detention charge that occurred while appellant was incarcerated in Madison County. Pronai was present in the courtroom when appellant pleaded guilty in that case.

{¶ 5} Pronai testified that in October 2017, he received a handwritten letter stating:

> Stephen
>
> I am not sure if we have met before. It's been many years since I been in your county. It may be a different Prosecutor I seek. But really, it don't matter cause it's the simple fact that . . . you are a prosecutor.
>
> Simply put . . . I hope you understand why I'm writing you this letter. It can be took as a joke or whatever, but I don't play games Stephen.

2.

Back in 2006, your department of prosecutors charged me with having a weapon in prison, got me more time and having to owe $450.83 in court cost I'm unable to pay off.

I'm giving you 2 options. 1) Overturn my case. 2) Take this as a game and see how much longer you got left to live. You can't do nothin to stop what I can get done to you, your family and all the rest of your prosecutors. I'm here and your there — all I have to do is say the word.

I'll make the situation easier for you. I owe $1,774.70 in court cost. You pay that by next week, I'll call off everybody and spare your life.

The letter was unsigned. However, the envelope contained a return address for "James Ward #517-461" at the Toledo Correctional Institution in Lucas County, Ohio. "#517-461" was appellant's inmate number.

{¶ 6} Pronai confirmed that his office did prosecute appellant in 2006, and that appellant was sentenced to two years in prison, to be served consecutively to the sentence that he was serving at the time. Pronai also confirmed that the 2006 judgment entry of conviction ordered appellant to pay $450.83 in court costs.

{¶ 7} Upon receiving the letter, Pronai turned the matter over to the Ohio State Highway Patrol, which is in charge of investigating crimes that occur within the state prison system.

{¶ 8} Pronai next testified that in December 2017, he received a second handwritten letter stating:

3.

You sent the athorities to me . . . for what, thinking that they can really do something? Do you really believe that your death can be stoped just cause you notified athorities and i'm in prison? Do you think trying to get me more time is worth your life? Do you really think the courts will really look into this waste of time?

The only thing you did was made a Big mistake by not sending me my money and overturning my case.

The courts can't do nothing to me but piss me off, which is exactly what you did. Nothing can stop whats about to happen to you as long as i'm here and your there.

This is enough talking tho. When your least expecting it . . . then you'll know you made the biggest mistake of your life. Should have been thinking about your family . . . and there safty too.

Again, the letter was unsigned, and it came in an envelope containing a return address for "James Ward #517-461."

{¶ 9} Upon receipt of the letters, Pronai contacted the local sheriff and increased security at the prosecutor's office, and took other measures to protect his family and his staff.

{¶ 10} On cross-examination, Pronai testified that he did not request any fingerprint or DNA analysis to be conducted on the letter or envelope. Pronai was told

4.

that because so many people had probably touched the letter that it would be a waste of time.

{¶ 11} The second, and final, witness to testify for the state was Ohio State Highway Patrol Trooper David Schultz. Schultz testified that he interviewed appellant in October 2017, after the first letter was sent. Appellant denied sending the letter. Schultz testified that he again spoke with appellant after the December 2017 letter was sent, and again appellant denied sending any letters. Schultz later testified that while other prisoners would have known that he was at the prison speaking with appellant, they would not have known the content of his conversation.

{¶ 12} Schultz next testified regarding a similar letter that had been sent to the prosecutor in Montgomery County, Ohio. Schultz read from Joint Exhibit 1, which was the appellate decision in *State v. Ward*, 2d Dist. Montgomery No. 26916, 2016-Ohio-7627, affirming appellant's conviction for retaliation under R.C. 2921.05(A). Schultz read the letter in that case:

> "Ms. Bruns, you may not remember who I am after all these years, knowing you've helped convict many people even at a young age.
>
> * * *
>
> "And given so much time that it destroys their family relationships and so much more. Young juveniles that could have just been put through treatment, but you ain't the type that cares. You care nothing about the young or old; just lock up all the people you feel needs to be off the streets.

5.

"Well, Julie, this is James Ward. I was one of them juveniles you helped convict of a rape case in 2005 and 2006. You got me mandatory years on my first case, 11 on my second, and ever since then, my family relationships have been destroyed due to lack of contact in here, and all I really think about is when am I ever going to see my family again.

"What, when I'm 36 to 48 years old? My father is getting old and my grandmother is dying, neither I get to see. I've developed so much hurt and pain over the years, Julie, that turn to so much anger and rage. Why? Because I've realized many years ago that what I did was wrong and have actually made changes in my life, but does the courts or you really give a – give a damn to let me go home? No. All you care about is locking people up, so-called criminals, when we're nothing but human beings that just need help.

"It's this type of treatment we get that really makes us into the monsters you all first indicate that we are, so look and listen closely, Julie. I'm about to show you the monster you helped turn me into by sending me to prison for all this time. They say the worst you can do is lock someone up to where he has so much time to develop plans on how to get away with doing things.

"The worst mistake the government ever does it puts all of us so-called criminals together; murderers, hit men, drug dealers and so much

more.  Basically, y'all putting a label on us that we really ain't.  So this is what it is, Julie, either you overturn both my cases or get my time took down to just 14, which will leave me with six more years, or I'm sending death your way through people, I've come to – through people I've come to meet while in here, and if you think it's a game, just try me, because as far as I know, it ain't s*** you can do to stop me.

"You're there and I'm here, right where I need to be to send the word and get your life took along with everybody else.  Yeah, that's right, you along with all the detectives that was working my case.  They don't believe I sent that letter but only time will tell, and right now, time is getting short.  Julie, it's your call, live or die, but time is on my side, not yours nor theirs, take care.

"Plus, you got me paying all this dam court costs that I can't even f***ing pay.  For years, I've been struggling to get the things I need, but you don't – sorry – you don't give a f*** about that.  So what do you think I give a f*** about; definitely not you.  Just be ready when that time comes."

{¶ 13} On cross-examination, Schultz acknowledged that in the Montgomery County case, the investigators conducted fingerprint, DNA, and handwriting analysis on the letter, all of which showed that appellant was the author of the Montgomery County letter.  Schultz testified that no such analysis was conducted in the present case, although

7.

he explained that he was informed by the Bureau of Criminal Investigations that it likely would not be useful because of the number of people that handled the letter after it was opened by Pronai's office.

{¶ 14} Following the state's presentation of evidence, appellant moved for acquittal pursuant to Crim.R. 29(A). Appellant argued that the state failed to meet its burden of proof because it did not utilize any of the forensic tools available to it, and instead relied upon the fact that the return address identified appellant as the author of the letters. The state responded that in addition to the return address, the letters themselves identified appellant as the author by the inclusion of information specific to appellant's prior case, and by the reference in the December letter to having the authorities sent in response to the October letter. Upon consideration of the parties' arguments, the trial court denied appellant's motion.

{¶ 15} Appellant then rested without calling any witnesses, and renewed his Crim.R. 29(A) motion, which the trial court denied. The matter was then submitted to the jury. Thereafter, the jury returned with a verdict of guilty as to both counts of retaliation.

{¶ 16} Following the jury's verdict, the trial court immediately proceeded to sentencing. The court sentenced appellant to serve 36 months in prison on each count of retaliation, and further ordered those sentences to be served consecutively to each other and to the sentences that he was currently serving.

## II. Assignments of Error

{¶ 17} Appellant has timely appealed his judgment of conviction, and now asserts two assignments of error for our review:

1. The trial court erred in denying Appellant's Crim.R. 29 motion.

2. The jury's verdict was against the manifest weight of the evidence presented at trial.

## III. Analysis

{¶ 18} In his first assignment of error, appellant argues that the trial court erred when it denied his Crim.R. 29(A) motion for acquittal.

{¶ 19} "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. In reviewing a record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 20} Here, appellant was convicted of retaliation in violation of R.C. 2921.05(A), which provides, "No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against a public servant, a party official, or an attorney or witness who was involved in a civil or criminal action or proceeding

9.

because the public servant, party official, attorney, or witness discharged the duties of the public servant, party official, attorney, or witness."

{¶ 21} Appellant does not challenge the elements of the crime of retaliation. Instead, he argues that the state failed to present sufficient evidence to prove that he was the person who sent the October and December 2017 letters. Specifically, appellant argues that the state failed to produce any forensic evidence, despite the fact that the seals from the envelopes were likely uncontaminated and could have been submitted for DNA analysis, or that the letters could have been submitted for handwriting analysis. In so arguing, appellant contrasts the present case with the previous case in Montgomery County where such forensic analysis was conducted.

{¶ 22} However, our role in a sufficiency analysis is not to examine what evidence could have been presented to prove the case, but rather to examine the evidence that was presented, and to determine if based upon that evidence, a rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt.

{¶ 23} In this case, we find that the evidence, when viewed in the light most favorable to the prosecution, is sufficient to support the jury's conclusion that appellant was the author of the letters. In addition to appellant's name and inmate number being included on the return envelope, the letters themselves contained information specific to appellant. The October 2017 letter correctly identified the year of appellant's original conviction for having a weapon while in detention, identified that appellant received additional prison time for that conviction, and identified the specific amount that he owed

10.

in court costs. The December 2017 letter opened with a remark that Pronai sent the authorities to investigate appellant, alluding to the October 2017 interview that Schultz had with appellant. Furthermore, the October and December 2017 letters contained similar wording and threats as the letter for which appellant was convicted in Montgomery County, such as, "I'm here and you're there," "you think this is a game," and the references to court costs. Based upon this evidence, we conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant was the author of the October and December 2017 letters. Therefore, we hold that his convictions are not based on insufficient evidence and the trial court did not err in denying appellant's Crim.R. 29(A) motion for acquittal.

{¶ 24} Accordingly, appellant's first assignment of error is not well-taken.

{¶ 25} In his second assignment of error, appellant argues that his convictions are against the manifest weight of the evidence, again limiting his argument to the lack of any scientific testing in this matter.

{¶ 26} A claim that a jury verdict is against the manifest weight of the evidence requires an appellate court to act as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In so doing, the appellate court,

> reviewing the entire record, weighs the evidence and all reasonable
> inferences, considers the credibility of witnesses and determines whether in
> resolving conflicts in the evidence, the jury clearly lost its way and created
> such a manifest miscarriage of justice that the conviction must be reversed

11.

and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.

*Id.*

{¶ 27} Upon our review of the record, we find that this is not the exceptional case in which the jury clearly lost its way and created a manifest miscarriage of justice. As discussed above, the identification of appellant as the author of the October and December 2017 letters is supported by appellant's name and inmate number being included in the return address on the envelopes, the inclusion of information specific to appellant, and the similarities between those letters and the Montgomery County letter. We find that this evidence outweighs the unsubstantiated theory that another person authored the letters to frame appellant for the crimes of retaliation. Therefore, we hold that appellant's convictions are not against the manifest weight of the evidence.

{¶ 28} Accordingly, appellant's second assignment of error is not well-taken.

## IV. Conclusion

{¶ 29} For the foregoing reasons, we find that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

12.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                                       _____
JUDGE

Thomas J. Osowik, J.

_____
Myron C. Duhart, J.                                            JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.